```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :
PAUL S. SCHROEDER,                                      :
                                                        :
                         Plaintiff,                     :
                                                        :            18-cv-6624 (VSB)
           -v-                                          :
                                                        :              OPINION & ORDER
UNITED STATES OF AMERICA,                               :
                                                        :
                         Defendant.                     :
                                                        :
------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/11/2020

Appearances:

Paul S. Schroeder
Brookfield, CT
*Pro se Plaintiff*

Casey Kyung-Se Lee
Danielle Judith Levine
Brandon Herbert Cowart
U.S. Attorney's Office, SDNY
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

On July 20, 2018, Plaintiff Paul S. Schroeder ("Plaintiff" or "Schroeder") commenced this medical malpractice action against the United States of America ("Defendant" or "Government") pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, and 28 U.S.C. § 1346(b). Before me is the Government's motion for summary judgment. (Doc. 61.) Because Plaintiff has failed to present necessary expert testimony in support of his medical malpractice claim, the Government's motion is GRANTED.

I.      **Factual Background**[1]

Plaintiff is a 73 year-old with a history of diabetic proliferative retinopathy and cystoid macular edema in both eyes. (Gov. 56.1 ¶ 1.) Both of these conditions can cause swelling of the retina and loss of vision, among other symptoms. (*Id.* ¶ 2.) To address the vision problems caused by Plaintiff's conditions, Plaintiff had been receiving a series of eye injections at the United States Department of Veterans Affairs ("VA") medical center in the Bronx, New York ("Bronx VA"), as well as other centers. (*Id.* ¶ 3.) The medications used in the injections—Avastin, Lucentis, or Eyelea—are meant to treat swelling in the retina and the development of abnormal blood vessels. (*Id.* ¶ 4.)

On August 29, 2016, Plaintiff went to the Bronx VA for his scheduled appointment for an injection of Avastin into his left eye. (*Id.* ¶ 5.) No complications during the procedure were noted. (*Id.* ¶ 7.) However, on August 30, 2016, Plaintiff visited the Castle Point Campus of the VA, Hudson Valley Health Care System, with complaints of a swollen left eye with tearing and photophobia. Although the optometrist noted decreased vision, redness, and swelling in Plaintiff's left eyelid, there was no evidence of intraocular infection or inflammation. (*Id.* ¶ 8.) The optometrist diagnosed Plaintiff with possible preseptal cellulitis—a superficial skin infection—and instructed him to use hot compresses, tears, and an antibiotic eye drop. (*Id.*) On

---

[1] The following summary of undisputed material facts is derived from the Government's Local Civil Rule 56.1 Statement, (Doc. 65 ("Gov. 56.1")), supported by the Declaration of Danielle J. Levine, dated February 21, 2020, (Doc. 64 ("Levine Decl.")), and the Declaration of A. Joseph Rudick, M.D., dated February 20, 2020, (Doc. 63 ("Rudick Decl.")), and the accompanying exhibits. Although the pro se Plaintiff did not file a Local Civil Rule 56.1 Statement in opposition, I also consider various medical records and other documents submitted by Plaintiff throughout this case. (*See* Docs. 20, 26, 28, 38, 50.) I note that Plaintiff was served with the notice required by Local Rule 56.2, informing him of the nature of a summary judgment motion and the manner in which it could be opposed. (Doc. 66, at 2.) However, Plaintiff failed to oppose the Government's motion or file a Local Civil Rule 56.1 Statement. Although "[I] may not rely solely on the statement of undisputed facts contained in the [Government's] Rule 56.1 statement," with regard to my summary of undisputed material facts, I have independently reviewed the record and am "satisfied that the citation to evidence in the record supports the assertion[s]" in the Government's 56.1 statement. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

August 31, 2016, Plaintiff went to Danbury Hospital, again complaining of pain in his left eye, but the emergency room physician found Plaintiff's examination to be unremarkable and referred him to ophthalmology for a follow-up. (*Id.* ¶ 9.) On the same day, Plaintiff visited Danbury Eye Physicians for evaluation of the irritation to his eye, and the ophthalmologist observed no signs of intraocular infection, but noted signs of dry eyes. (*Id.* ¶ 10.) The ophthalmologist instructed Plaintiff to use tear supplements to treat the dry eye, and to continue use of antibiotic eye drops to treat any possible conjunctivitis. (*Id.*) On September 9, 2016, Plaintiff returned to Castle Point VA medical center for a follow-up appointment, where it was noted that Plaintiff's symptoms had completely resolved. (*Id.* ¶ 13.)

On September 11, 2017, Plaintiff went to the Bronx VA for an injection of Lucentis into his left eye. (*Id.* ¶ 14.) No complications during the procedure were noted. (*Id.* ¶ 16.) However, on September 12, 2017, Plaintiff visited Castle Point VA medical center, once again complaining of swelling, tearing, redness, pain, and photophobia after the injection. (*Id.* ¶ 17.) The optometrist assessed Plaintiff as having dry eye with angioedema, or swelling, of the left upper lid, but noted that there was no evidence of an eye infection or inflammation, and instructed Plaintiff to use tear supplements and cool compresses and to return to the clinic in three months or as needed. (*Id.*) Plaintiff returned to the Castle Point VA medical center on September 15, 2017, and again on September 22, 2017. (*Id.* ¶¶ 18–19.) During the latter visit, vitritis (inflammation or swelling) was noted, and the optometrist diagnosed Plaintiff with dry eye syndrome and vitreal syneresis in both eyes, meaning that the vitreous in his eyes was developing opacities. (*Id.* ¶ 19.) After a phone call with Plaintiff on September 22, 2017, the doctor who had given Plaintiff the injection—Dr. Laiyin Ma—noted that it was possible that Plaintiff had an allergic reaction to the iodine preparation used as part of the injection. (*Id.* ¶ 25,

*see also* Levine Decl. Ex. 10.)

## II. Procedural History

Plaintiff filed the complaint in this case on July 20, 2018, (Doc. 2), after his administrative tort claim with the VA was denied, and filed an amended complaint on May 30, 2019, (Docs. 27, 29). Plaintiff alleges that on August 29, 2016, and September 11, 2017, physicians at the Bronx VA injected the incorrect medication into his left eye with an unsterile needle, causing floaters, pain, and worsened vision. He also alleges that the injections caused an infection in the same eye.

Aside from deposing Dr. Laiyin Ma, Plaintiff did not conduct any substantive discovery in this case or retain an expert. The Government retained A. Joseph Rudick, M.D., to assess and opine on Plaintiff's allegations. (Doc. 63.) On July 23, 2019, Plaintiff stated in a letter that he "[could not] find an expert, except for the information of the doctors who treated [him]." (Doc. 39.) On October 11, 2019, I held a conference, during which I extended the discovery schedule to permit Plaintiff additional time to try to locate and retain an expert. At the conference, I instructed Plaintiff that under New York law, he would need an expert to support his medical malpractice claim. On October 25, 2019, I entered an order granting Plaintiff pro bono counsel for the purpose of deposing Defendant's expert witness, Dr. Laiyin Ma, noting that "[w]ithout counsel, Plaintiff [would] be unable to effectively depose Defendant's medical expert, which would be detrimental to Plaintiff's chances of surviving summary judgment." (Doc. 45, at 3.) No such deposition took place,[2] however, and on November 22, 2019, Plaintiff filed papers which he styled as a motion for summary judgment, consisting of photographs and excerpts of

---

[2] On January 24, 2010, an attorney from Mintz, Levin, Cohen, Ferris, Glovsky and Popeo, P.C. informed the Court that the firm would not be able represent Plaintiff for the limited purpose of deposing the Government's expert. (Doc. 57.)

medical records.  (Doc. 50.)  On December 13, 2019, I held a conference to discuss the status of Plaintiff's efforts to retain an expert, and entered a briefing schedule for the Government's motion for summary judgment.  (Doc. 54.)

The Government filed its motion for summary judgment on February 21, 2020, supported by a memorandum of law, two declarations, and a Local Civil Rule 56.1 Statement.  (Docs. 61–65.)  Plaintiff did not substantively oppose the Government's motion.  (Doc. 67.)  On April 22, 2020, the Government's motion became fully briefed when the Government filed a reply letter resting on its opening papers.  (Doc. 68.)  I also consider a supplemental authority letter submitted by the Government on June 18, 2020.  (Doc. 70.)

### III.     Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[ ]'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id*. at 248.

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id*. at 256 (citation omitted), and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R*., 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citations and internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Nevertheless, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). The ultimate inquiry is "whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

Pro se litigants are afforded "special solicitude" on motions for summary judgment. *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). Courts read the pleadings, briefs, and

opposition papers of pro se litigants "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks omitted); *see also Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of pro se litigants are "held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 577 (S.D.N.Y. 2008) ("District courts should read the pleadings of a pro se plaintiff liberally[,] and [the] same principles apply to briefs and oppositions submitted by pro se litigants." (internal quotation marks omitted)).

However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); s*ee also Bennett v. James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a pro se litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial.") (citations omitted).

## IV. Discussion

"[T]he FTCA defines the liability of the United States in terms of that of a private individual under the law of the state where the alleged tort occurred." *Guttridge v. United States*, 927 F.2d 730, 732 (2d Cir. 1991); *see also* 28 U.S.C. § 2674.  Accordingly, because the alleged tort occurred in New York, New York law applies to this action.  To prove medical malpractice under New York law, a plaintiff must establish "(1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injuries." *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994).

"It is well established in New York law that unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice." *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987) (internal quotation marks and citation omitted); *see also Ongley v. St. Lukes Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46–47 (2d Cir. 2018) (summary order) ("The plaintiff must present expert testimony and the expert's opinion must demonstrate the requisite nexus between the malpractice allegedly committed and the harm suffered." (internal quotation marks and citations omitted)); *Shields v. United States*, 446 F. App'x 325, 326 (2d Cir. 2011) (summary order); *Potter v. United States*, No. 17-CV-4141 (AJN), 2020 WL 2836440, at *3 (S.D.N.Y. May 30, 2020); *Vivar v. City of New York*, No. 18-CV-5987 (VSB), 2020 WL 1505654, at *15 n.14 (S.D.N.Y. Mar. 30, 2020) (same); *Berk v. St. Vincent's Hosp. & Med Ctr.*, 380 F. Supp. 2d 334, 343 (S.D.N.Y. 2005).  An alleged act of malpractice falls within the competence of a lay jury to evaluate, and therefore does not require expert testimony, where the deviation is "clear and obvious." *Moore v. United States*, No. 18-CV-3679 (KMK), 2020 WL 2765833, at *6 (S.D.N.Y. May 27, 2020) (quoting *Sitts*, 811 F.2d at

740). "Even where it might initially appear that the matter would be within the trier's ordinary competence, however, . . . if the defendant can proffer any evidence to support the view that a proper standard of care was followed, the plaintiff cannot prevail without introducing expert medical testimony." *Sitts*, 811 F2d at 740. "Thus, expert testimony is generally necessary to establish the applicable standard of practice and, in an appropriate case, to determine whether an alleged deviation from that standard was the proximate cause of a plaintiff's injuries." *Potter*, 2020 WL 2836440, at *3 (internal quotation marks omitted).

The Government has presented an expert report from A. Joseph Rudick, M.D., in which Dr. Rudick opined that there is no evidence that the injections to Plaintiff's left eye deviated from the appropriate standard of medical care. (Doc. 63-2, at 4, 6.) Dr. Rudick further opined that Plaintiff's symptoms following the injections were not caused by any such deviation, and were likely the result of allergic reactions that "[p]atients will sometimes develop . . . to the sterile preparation that is used prior to injections." (*Id.*) Dr. Rudick's report also states that there is no evidence that the wrong medication was used in Plaintiff's injections, and that certain of Plaintiff's symptoms, such as floaters and poor vision, are the result of normal aging in patients—like Plaintiff—who suffer from diabetic eye diseases. (*Id.*) Plaintiff has not challenged Dr. Rudick's report through cross examination, or retained his own expert to offer a competing interpretation of the evidence. I also find no basis to exclude Dr. Rudick's report.

Plaintiff allegations do not involve a "clear and obvious" deviation from the appropriate standard of medical care, and this is not the "rare" medical malpractice action in which expert testimony is unnecessary to establish the elements of Plaintiff's claim. *See Sitts*, 811 F.2d at 739–40 (providing examples of cases in which expert testimony is not required, including where "the surgeon left a needle inside the patient's body," "where a dentist has pulled the wrong tooth,

9

or where an unexplained injury has occurred to a part of the body remote from the site of the surgery"). Even if this were such a case, the Government has offered expert testimony stating that the appropriate standard of care was followed, and that Plaintiff's injuries were not caused by any alleged deviation from that standard, testimony which Plaintiff has not attempted to rebut. Accordingly, Plaintiff cannot establish a prima facie case of medical malpractice under New York Law, making summary judgment appropriate. *Potter*, 2020 WL 2836440, at *8 ("If a plaintiff cannot establish a prima facie case without the benefit of expert testimony, and the plaintiff is unable to procure such testimony, then summary judgment is appropriate." (quoting *Zeak v. United States*, No. 11 Civ. 4253(KPF), 2014 WL 5324319, at *11 (S.D.N.Y. Oct. 20, 2014) (quoting *Adorno v. Corr. Serus. Corp.*, 312 F. Supp. 2d 505, 514 (S.D.N.Y. 2004)))).

I note that in a prior case in this district, Plaintiff's allegations of medical malpractice by the VA were defeated on summary judgment because, as here, Plaintiff failed to offer expert testimony. *See Schroeder v. United States*, 7:08-cv-03438-KMK, Dkt. #25 (S.D.N.Y. Mar. 31, 2010). As acknowledged by Judge Kenneth M. Karas in Plaintiff's prior case, "[t]he Court has had several conferences with Mr. Schroeder and appreciates his frustration . . . ." *Id.* at 4. "Mr. Schroeder has served our country honorably and . . . there should be no question [] that we treat our veterans with utmost respect and that they should receive proper medical care." *Id.* I wholeheartedly agree with the sentiments of Judge Karas. It is in part for these same reasons, and to make sure that Plaintiff—who could not afford to retain counsel or an expert witness— had a fair opportunity to meet his obligations under New York law, that I entered an order attempting to find Plaintiff pro bono counsel to depose the Government's expert. (Doc. 45.) Unfortunately, this effort was not successful; however, that does not alter the fact that Plaintiff has not established a prima facie case.

### V.      Conclusion

For the reasons stated above, the Government's motion for summary judgment, (Doc. 61), is GRANTED.  The Clerk is directed to close the case and is further directed to mail a copy of this order to the pro se Plaintiff.

SO ORDERED.

Dated:  August 11, 2020
        New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge